# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PETER RAY ARAGON, aka
PETER LAYCOCK ARAGON,

    Petitioner,

vs.                                          Civil No. 99-1004 JP/WWD

LAWRENCE TAFOYA, Warden and
PATRICIA A. MADRID, Attorney General,

    Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

1. THIS MATTER comes before the Court upon Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed September 7, 1999. Mr. Aragon ("Aragon") is currently incarcerated and is represented by appointed counsel. Petitioner was convicted on January 9, 1997, of the offense Attempted Escape from Jail, CB-95-324-CR.[1]

2. Petitioner raises the following grounds in his petition:

*(1) Whether Mr. Aragon was denied a fair trial by prosecutorial misconduct; and*

*(2) Whether Mr. Aragon received ineffective assistance of counsel at trial.*

### Background

3. The following are the facts on which the state appeals court based its affirmance of Petitioner's conviction. Ans., Ex. M. These facts are consistent with those presented in the parties' briefs, and with the evidence presented at trial through testimony, see e.g., T. 6, 1/8/97,

---

[1] Mr. Aragon has another habeas petition based on another state conviction, Civil No. 00-1354, pending before this Court.

2.27- 40.² During a cell search, one of the prison guards discovered a partially cut bar on a cell window made by hacksaw blade. A shakedown was conducted, during which a hacksaw blade was discovered in a mattress assigned to Petitioner. Mattresses were usually checked before being assigned to new inmate, but there was no way to know for certain how long the hacksaw blade had been in the mattress that was in Aragon's cell at the time.

4. Aragon said that he was not attempting to escape from jail, although he admitted having purchased a hacksaw blade. He testified that the blade he purchased was not the same one that was found in the mattress. T. 6, 1/8/97, 6.8-7.2. He testified at trial against counsel's advice.

5. Aragon's story was that an inmate named Frank Martinez, who was previously housed in Aragon's cell, had actually cut the cell bar and had signed an affidavit to that effect. T.10, 1/9/97, 7.2-7.3; RP at 71.³ He said that he was only pretending to cut the bar, and that he had made a deal with deputy warden Ulibarri to locate weapons in exchange for a release on his own recognizance. He had purchased and kept the hacksaw to gain the trust of the inmates who were planning an escape. Aragon stated that he wanted to prevent the escape because it involved younger inmates who "might get hurt," since a gun was involved. He said that he didn't plan to

---

² "T" (Tape) citations to the state record proper are to a Sony Model BM-75, with approximately 46 counters per tape side. The jury trial was held on January 8th and 9th, 1997; therefore references to trial tapes should be 1/8 and 1/9, not 11/8 and 11/9, as is cited in part in the briefs. See Resp. at 8, 14. Petitioner's testimony which is referenced on those pages is found on Tape 7, not Tape 9.

³ This affidavit was offered but not admitted into evidence. It is attached as an exhibit to Petitioner's Motion to Stay Briefing, Doc. 30-2; RP 71. At trial, Aragon stated that he never told Larry Diaz, who was the acting sheriff at the time and who had investigated the attempted escape, that he had pretended to cut the bar. Instead, he said he told Diaz that he had simply warned anyone housed in that cell at the time that "charges may be brought." T. 6, 1/8/97, 31-32.

participate himself because he was afraid he would be blamed for instigating the escape. T. 6, 1/8/97, 40-41.

6. Among the witnesses at trial was the deputy warden at the time, Robert Ulibarri, who testified that there was no deal between Aragon and himself. He stated that Aragon had come to him with information about an escape, telling him that there were guns which were kept outside of the institution, and hacksaw blades and other equipment inside the prison. Ulibarri conducted a routine shakedown in the building, and inspected the outside for weapons -- and concluded that Aragon's claims were false. T. 12, 1/9/97, 20-17-21.33. About five days later, a cell search uncovered the hacksaw blade inside Aragon's mattress.

7. Ulibarri emphasized at trial that he had no kind of deal on any level, nor made promises of any type, to Petitioner. T.12, 1/9/97, 21.18-21.32. Upon re-direct examination, he stated that Aragon had a reputation as a "snitch" and as someone who usually was not truthful. T. 12, 1/9/97, 25.52-26.02.

8. Joe Sprunk, the warden, was also a witness at the trial, and stated that Aragon was known as someone who "likes to tell," T.12, 1/9/97, 3.46-3.47, and "comes out with some real doozies of stories about guns and explosives." 3.55-4.12. He stated that Aragon's comments would cause investigations to be made, which resulted in nothing being found. 4.34-4.40. He testified that during his stay at the prison, Aragon had never been housed with the general population, but has resided in the area known to house "snitches." T. 12, 2.38-3.38.

9. Sprunk also said that he was receiving mail regularly from Aragon around the time Aragon claims to have known of an escape attempt, but that Aragon never informed him about any such attempt. T.12, 13.27-29.

10. Following his conviction, Petitioner filed two motions for new trial and a direct appeal. Hearings were held on February 19, 1997 and November 6, 1997 (T. 97-17, 2/19/97; and T. 97-27, 11/6/97). The first of these post-conviction hearings addressed Aragon's allegations of ineffective assistance of counsel which dealt with counsel's decision not to subpoena witnesses.[4]

11. On direct appeal, the state court made express findings on both of the issues raised in this petition. <u>Ans., Ex. M</u>. A federal court is authorized to grant a writ of habeas corpus to a person in custody pursuant to a state-court judgment, but only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. §28 U.S.C. 2254(d).

**First Issue - Prosecutorial Misconduct**

12. Petitioner alleges that he was denied a fair trial by prosecutorial misconduct. He bases this allegation on several comments made by the prosecutor during trial, and a comment made during a bench conference. Each of these were addressed by the state court of appeals which determined that although some of the comments were improper, they did not result in prejudice to Petitioner. Although the appeals court relied on the state standard for prosecutorial misconduct, that standard tracks the federal standard which looks to see whether a defendant is deprived of a fair trial.

13. Not every improper and unfair remark made by a prosecutor will amount to a

---

[4] Mr. Stripp requested, and was granted, leave to withdraw before Petitioner's second post-conviction proceeding, which was filed by newly appointed counsel Gary Fernandez. This second hearing addressed allegations of newly discovered evidence and conflict of interest.

federal constitutional deprivation.  See Caldwell v. Mississippi, 472 U.S. 320, 338 (1985).  A prosecutor's improper comment or argument will require reversal of a state conviction only where the remarks sufficiently infect the trial so as to make it fundamentally unfair and, therefore, a denial of due process.  See Donnelly v. DeChristoforo, 416 U.S. 637, 643, 645 (1974).

14.  Petitioner challenges these comments made by the prosecutor:  (1) the use of the word "consigliore"; (2) the line of questioning regarding Petitioner's failure to subpoena Frank Martinez since Petitioner claimed to have wanted to call him as a witness; (3) hallway conversation referred to during Aragon's cross-examination; (4) reference to "gay activity"; and (5) the comment that "the gloves were coming off" when the prosecutor discovered that Aragon would testify at trial.

15.  A prosecutor's statements must be viewed in context of entire proceeding to determine whether the conduct in question affected the fairness of the trial.  United States v. Young, 470 U.S. 1, 11-12 (1985).

*"Consigliore" comment*.

16.  This comment was made in connection with the prosecutor's other comment that Aragon had not subpoenaed Frank Martinez as a witness, since Aragon was the "respected consigliore," the lawyer for the cellblock.  T. 10, 1/9/97, 11.3-15.  The state court noted that defense counsel's objection was promptly made and sustained, and that the subject of Aragon's legal expertise was proper because it had been raised on direct.  On direct, Aragon had described himself as a "paralegal," a "legal beagle," and a "jailhouse attorney in penitentiary language."  He stated that he "gave legal advice."  T. 10, 1/9/97, 20.30-20.38.  He was included in on the prison escape plan because of his "legal knowledge."  T. 6, 1/8/97, 26-28; see Walker v. Gibson, 228

F.3d 1217, 1230 (10th Cir. 2000) (prosecutor's line of questioning regarding defendant's propensity for violence was not improper because defense counsel's direct examination of defense witnesses "opened the inquiry").

17. According to Warden Sprunk's testimony, however, Aragon had never functioned in the general population, and had never been a legal aide or assistant. T. 12, 1/9/97, 2.38-3.40. Thus, cross-examination on the subject of Aragon's role was not inappropriate. Ans., Ex. M at 5. These findings are not unreasonable applications of clearly established federal law.

*Failure to subpoena Frank Martinez*.

18. The prosecutor asked Aragon why he had not listed or subpoenaed Frank Martinez whom he claimed would admit to cutting the cell bar. Aragon said that he could not subpoena a witness since he had an attorney and that he had wanted his attorney to subpoena Martinez.[5] T. 10, 1/9/97, 10.02-11.00. Defense counsel's objection to this line of questioning was sustained and the prosecutor moved on.

19. The state court did not make an express finding that the comment was improper, but concluded that even though it "may have been improper," the trial court's handling of the comment "combined with Defendant's statements on direct examination resulted in no prejudice to Defendant." Ans., Ex. M at 5. These findings are not unreasonable applications of, nor are they contrary to, clearly established federal law.

20. Although a prosecutor may not comment on a defendant's decision to refrain from testifying, see Griffin v. California, 380 U.S. 609, 615 (1965), he is otherwise free to comment on

---

[5] Defense counsel Stripp did not feel that it was necessary to call Martinez as a witness. T. 6, 1/8/97, 2.27.

a defendant's failure to call certain witnesses or present certain testimony. Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir.(Okla.) (citation omitted)). Aragon insisted that Martinez had cut the bar and insisted that he had wanted to call Martinez as a witness. In light of these contentions, combined with Petitioner's self-portrayal as a lay legal expert, the prosecutor's inquiry did not render the trial fundamentally unfair -- particularly given the trial court's intervention upon defense counsel's objection.

*Hallway conversation*.

21. Petitioner also challenges the prosecutor's reference to a conversation which had taken place earlier that morning between the prosecutor and Aragon in the hallway outside the courtroom. The relevant part of the conversation is as follows:

> Q. (prosecutor) Fine, what did I say to you?
> A. What you said to me was, "What's the matter, Mr. Aragon. You don't like the way things are going?"
> Q. And what was your answer?
> A. My answer was, "Hell no, this is a circus."
> Q. And what . . . go on.
> A. That's what I said. "Hell no, this is a circus."
> Q. And what else did you say?
> A. Refresh my memory.
> Q. Well, let me ask you, did you say . . . do you mind if I leave out a couple of the words? Did you say:
> Defense Counsel: I am going to object to this. I know where he's going, Your Honor, these are comments that were made outside of the courtroom. Kind of morning introductions while I was standing with Mr. Aragon, and I don't see that it is relevant to this proceeding in any way.
> Prosecutor: I'll tell you the relevance, Your Honor. Mr. Aragon has sat up here and tried to paint himself as the savior of the Cibola area. He's going to stop an escape. He's going to save the citizens of Cibola County. And I want the citizens of Cibola County, especially these citizens, to hear what he had to say about them this morning.
> Judge: The objection is sustained. Move on, Mr. Calligan . . . . T. 10, 1/9/97, 14.36-15.30.

7

22. The state court of appeals again noted that defense counsel objected, and the trial court sustained the objection.[6] The court rejected petitioner's argument on appeal that these comments improperly inflamed the jury, finding that the prosecutor "did not appeal to the passions or prejudices of the jury by implying the Defendant was a wicked man . . . ." Ans., Ex. M at 6.

23. I do not find this conclusion to be an unreasonable application of the federal law pertaining to prosecutorial misconduct. On direct examination, Aragon advanced the notion that he was trying to abort an escape in order to prevent harm. T.6, 1/8/97, 40-41. On cross-examination, Aragon conceded that his conduct was often "antagonistic." T. 10, 1/9/97, 14-24. The prosecutor's line of questioning could thus be characterized as a challenge to Petitioner's credibility. I find that the prosecutor's comments regarding their hallway conversation did not deprive Aragon of a fair trial.

*Reference to "gay activity"*.

24. During cross-examination, the prosecutor referred to Petitioner's statements that he had been raped during the Santa Fe prison riots as "gay activities." The line of questioning was related to Petitioner's claim that certain inmates who were planning an escape had taken Aragon into their confidence about the plan. The prosecutor commented (referring to inmate Rudy Gonzales and others) that "these are the same people that thought you were a snitch, that . . . had reason to believe that you'd participated in gay activities" and that they nevertheless let Aragon know they were hiding a gun. T.10, 1/9/97, 41.38-41.44.

---

[6] Petitioner also raised this particular issue in his motion for new trial, which was denied. RP ("Record Proper") at 129, 170.

25.  Aragon resented the prosecutor's use of the phrase "gay activities" and pointed out that he was not a willing participant when he was raped and that he was raped because he had been labeled a "snitch."  T.10, 1/9/97, 42.04 -45.

26.  Defense counsel did not object to the comment, although objections were "vehemently" made by Aragon himself from the stand.   In ruling on Aragon's motion for a new trial, the state court of appeals agreed with the trial court which had found that the comment bordered on misconduct, and itself found the comment to be "highly improper."  At the same time, the court of appeals concluded that the phrase alone was "insufficient to warrant a new trial."  Ans., Ex. M at 5.

27. As with the other prosecutorial comments, I find that this conclusion by the state court was not an unreasonable application of federal law in that the comments did not, in view of the entire proceeding, adversely affect the fairness of the trial.  See also Rojem v. Gibson, 245 F.3d 1130, 1143 (10th Cir. 2001) (prosecutorial comments that defendant was not a Christian, eliciting testimony about defendant's extramarital affairs and illegal drug use did not affect the outcome at trial, and the determination by the court of appeals that no fundamental error occurred was a reasonable one); Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560 (10th Cir. 2000) (reference to defendant as a "dangerous person" and implying that he had threatened codefendant into giving false testimony were inaccurate and deceptive, but did not render trial fundamentally unfair), abrog. on other grds., McGregor v. Gibson, 248 F.3d 946 (10th Cir. 2001); Nguyen v. Reynolds, 131 F.3d 1340 (10th Cir. 1997) (prosecutor's references in closing argument to defendant as inhuman and denigrating Vietnamese people as a whole, were not misconduct; comments were not flagrant enough to have influenced jury to convict on grounds other than

9

evidence presented at trial).

28. The prosecutor's reference to "gay activities" does not rise to a level where it interfered with the fairness of the trial. Cmp., State v. Ashley, 124 N.M. 1 (1997) (comments in bigamy prosecution about destitute condition of defendant's abandoned wife and daughter improperly depicted defendant as evil person before jury and improperly appealed to jury's passions and prejudices). Besides, as the state court noted, the comments may well have backfired. Id. ("[i]f anything, this comment, in light of Defendant's reaction, hurt the prosecutor's credibility in front of the jury").

*"Gloves were coming off"*.

29. The prosecutor commented that the "gloves were coming off" and that he would "go after" defendant when the prosecutor found out that Aragon was going to testify. Petitioner's argument is that this comment heralded the prosecutor's intention to engage in highly improper cross-examination. However, this "highly improper" cross-examination never took place because the trial judge prohibited the prosecutor to inquire into Aragon's prior felony convictions. Thus, the sole rationale to challenge the "gloves coming off" comment disappears, since not only did threatened inquiry never materialize, but in addition, the statement was not made in the presence of the jury. The state court of appeals' refusal to view these comments as prejudicial was not unreasonable.

30. Accordingly, Petitioner should be denied relief on this first ground, and this claim should be dismissed with prejudice.

**First Issue - Ineffective Assistance of Counsel**

31. Aragon contends that defense counsel failed to investigate and pursue potentially

exculpatory testimony or evidence.  These allegations center around Petitioner's objections to the way trial proceeded in terms of witnesses and trial preparation.

32.	To prove his counsel was constitutionally ineffective, petitioner must show that his counsel's performance was deficient and he was prejudiced by the deficiency.  See Strickland v. Washington, 466 U.S. 668, 687(1984); United States v. Glover, 97 F.3d 1345, 1349-50 (10th Cir.1996).

33.	With respect to the first prong, Aragon must show that defense counsel's performance was not simply wrong, but instead was completely unreasonable.  See Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997).  To show prejudice, Aragon must establish that, but for counsel's errors, there was a reasonable probability that the outcome of his trial would have been different.  Id. at 1245.  In examining counsel's performance, we focus on "not what is prudent or appropriate, but only what is constitutionally compelled."  United States v. Cronic, 466 U.S. 648, 665 n. 38 (1984), cited in Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir.1999).

34.	Petitioner specifically contends that defense counsel was ineffective because counsel failed to pursue a line of exculpatory evidence which would have corroborated Petitioner's own testimony that Frank Martinez, another inmate, had cut through the cell bars.   Aragon claims that because his attorney failed to adequately consult with him before trial and did not subpoena Martinez as a trial witness, he was forced to testify without the benefit of counsel's advice or preparation.   Aragon further claims that he might have decided not to testify if he had had more than five minutes prior to trial in which to consult with his attorney.   Because Martinez' alleged involvement was part of the factual basis of the charge of attempted escape from jail and is consistent with Petitioner's defense theory - that he was only *pretending* to cut the bar on his cell

11

window – Petitioner argues that the outcome of the trial would have been different were it not for counsel's deficient performance.

35.  Aragon expressed dissatisfaction and conflicts with each of at least three attorneys who were assigned to represent him at different times, starting at the morning of the trial.  After a recess following the denial of a motion for directed verdict, during which defense counsel conferred with Petitioner, Mr. Stripp notified the trial judge that Aragon disagreed with his decision not to call any defense witnesses, including Frank Martinez who had claimed to cut the bars in the cell window.  Counsel had decided to limit the defense case-in-chief to a cross-examination of government witnesses, and the decision not to call any defense witnesses, including Frank Martinez who had claimed to cut the bars in the cell window.  Defense counsel stated that he saw no need to subpoena Frank Martinez because of the weakness of the prosecution's case, and noted that an affidavit by Martinez was available.  T.6, 1/8/97, 2.24-7.00.[7]

36.  Aragon complained that counsel had not consulted with him about his case prior to trial and had not subpoenaed any of the witnesses he wanted.  He wanted to make sure that the "whole story" was presented.  10.05-10.17.

37.  The trial judge declined to remove counsel from the case, noting that Petitioner had already fired a prior attorney.  The judge noted that Aragon had the "right to counsel, not the right to choose counsel. . . I would expect that if I assigned another attorney, I would expect that Mr. Aragon would have some disagreement with that attorney or with the fourth or fifth

---

[7] This material is cited in Petitioner's memorandum brief as part of Tape 3, which according to the record proper and the tape contents, contains proceedings relating to jury selection and opening statements.  Mem. at 7.

attorney." T. 6, 1/8/97, 3.05-7.56. The Court told Aragon that trial would proceed, that he had a "right to counsel," but not a right to choice of counsel, and that Aragon would have the opportunity to appeal on the ground of ineffective assistance on appeal or in post-conviction proceedings. T.6, 7.50-10.22.

38. This issue was also addressed in one of the post-conviction hearings, held on February 19, 1997. Aragon again complained that he never had the opportunity to discuss his case or his own views about his case with his attorney. T.97-17, 2/19/97, 12.10-12.15. The prosecution argued that defense counsel had broad discretion over how to present Aragon's case, and that a defendant has no right to "stick his nose" in procedural matters. 16.49-16.56.

39. The prosecution also pointed out that Aragon's decision to exercise his Sixth Amendment right to testify cannot be blamed on counsel, since that is a decision which belongs to the defendant. 15.30-15.36. The prosecutor further described Aragon as "sophisticated" and not someone who is "at the mercy" of legal professionals "playing with his life." 18.20- 18.43.

40. The trial court agreed with the prosecution. The judge recollected that Aragon had testified against the advice of counsel. 24.15-24.24.[8] The judge went so far as to say that, based on his evaluation of the evidence from trial, Aragon had stood an "excellent chance of getting acquitted" and that it was Aragon's own decision to take the stand which affected the case "tremendously" so as to put it "over the edge." 24.39-25.08.

41. The state court of appeals dismissed the ineffective assistance claim regarding the subpoena of witnesses on the ground that these decisions are strategic or tactical decisions that a

---

[8] During the judge's comments, Aragon interjected that his attorney "didn't tell me why, he just told me not to [testify]." T.6, 1/8/97, 24.23-24.24.

13

court will not "second-guess."  Ans.,Ex. M at 12.   Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."  Moore v. Marr et al, 254 F.3d 1235, 1239 (10th Cir. 2001) (quoted case omitted).  Such decisions are "virtually unchallengeable."  Strickland, 466 U.S. at 690 (1984).

    42. Aragon has not shown that defense counsel's decision not to call Frank Martinez as a witness was either unreasonable or had no relationship to a possible defense strategy, in light of the evidence from the state court hearings on this issue.  Even if one were to assume that counsel's performance was deficient in this area (an assumption the record does not support), Aragon's claim still fails, because he has not shown prejudice.  See Walker v. Gibson, 228 F.3d 1217, 1230 (10th Cir. 2000) (court may address the performance and prejudice components in any order and need not address both if a petitioner fails to make the requisite showing for one.  As noted above, the evidence to which Mr. Martinez would have testified was before the jury in the form of affidavit as well as Aragon's own testimony.   The record also supports the finding that if there were any prejudice to Petitioner's case, it resulted from Aragon's own decision to testify.

    43.  Petitioner's contention that counsel was also ineffective in failing to spend more time consulting with him about his case also has no merit.  On this issue, the state court noted that Aragon had presented the court with no authority supporting his contention.   This Court's analysis of this issue is governed by the due process clause which guarantees a defendant a fair trial.  See U.S. v. Hasting, 461 U.S. 499, 508-09 (1983) (stating that "there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial").

    44.  Based on the state court record, I find that Aragon received a fair trial and that his

allegations concerning the time counsel spent discussing his case with him, even if true, do not offend due process notions. Aragon does not contend that counsel didn't adequately spend *any* time preparing his case, but rather that counsel didn't spend time discussing the case with *him*, getting Aragon's views on how to proceed and getting the "whole story" out. In fact, the record indicates that Mr. Stripp had reviewed taped interviews with the state's witnesses provided to him by prior counsel, reviewed a file given to him by Mr. Aragon, and reviewed correspondence from Mr. Aragon. In addition, Mr. Stripp stated at the February 19, 1997 post-conviction hearing that he had numerous telephone conversations with Mr. Aragon. T.97-17, 2/19/97, 11.20-22.23.

45. In conclusion, I find that relief should be denied on both grounds raised by Petitioner. Dismissal with prejudice of the first ground (prosecutorial misconduct) should be entered on the basis that the state court findings were not contrary to, nor did they involve an unreasonable application of, clearly established federal law, under §28 U.S.C. 2254(d), and also on a review of the state court record. Dismissal with prejudice of the second ground (ineffective assistance of counsel) should be entered on the basis of state court findings as well as a *de novo* review of the state court record.

## Recommendation

I recommend that Petitioner's application for Writ of Habeas Corpus be DENIED and that this cause be DISMISSED WITH PREJUDICE in its entirety.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party wants to have appellate review of

the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_/s/ William W. Deaton_
UNITED STATES MAGISTRATE JUDGE
